FILED & JUDGMENT ENTERED
Steven T. Salata

Apr 19 2012

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
J. Craig Whitley
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| IN RE: ) | Bankruptcy Case No. 10-30013 |
| ) | Chapter 7 |
| JAMES WILLIAM BECHTOLD and ) | |
| CAREN LEE BECHTOLD, ) | |
| ) | |
| Debtors. ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

THIS MATTER came on before the undersigned United States Bankruptcy Judge for the United States Bankruptcy Court for the Western District of North Carolina on September 14, 2011, on the Trustee's Emergency Motion to Freeze Proceeds from Unauthorized Sale of Real Property by Debtors and Motion for Show Cause, and on Debtors' Motion to Approve Sale of Real Property nunc pro tunc and Motion to Amend Exemptions. John W. Taylor, attorney, appeared on behalf of the Trustee; Michael K. Elliott appeared on behalf of the Debtors, James William Bechtold and Caren Lee Bechtold. No other parties in interest appeared.

**PROCEDURAL BACKGROUND**

1. This Case was commenced by the filing of a joint voluntary bankruptcy petition by Defendants under Chapter 7 of the Bankruptcy Code on January 5, 2010; Case No. 10-30013.

2. Larry M. Stiles is the duly appointed Trustee in the above captioned bankruptcy case.

3. On September 29, 2010, the Trustee filed an adversary proceeding against the Debtors objecting to the entry of their discharge under Bankruptcy Code Section 727; Adversary Proceeding 10-3255 (the "Adversary Proceeding"). In his Complaint, the Trustee alleged numerous instances of

misrepresentations and omissions by the Debtors in their bankruptcy schedules and statement of financial affairs. In their Answer the Debtors denied the Trustee's allegations.

4. By Order entered April 18, 2011 in the Adversary Proceeding, this Court approved a settlement between the Trustee and the Debtors in which the discharge of Mr. Bechtold was denied and the discharge of Mrs. Bechtold was allowed. On April 18, 2011, the Court entered Mrs. Bechtold's order of discharge.

5. On May 1, 2011, the Trustee filed his Emergency Motion to Freeze Proceeds from Unauthorized Sale of Real Property by Debtors and Motion for Show Cause based upon his discovery of the Debtors' unauthorized post-petition sale of real property.

6. On May 2, 2011, the Court entered its order freezing the sale proceeds and ordering the Debtors to appear and show cause.

7. In response, On May 3, 2011, the Debtors filed their Motion to Approve Sale of Real Property nunc pro tunc and Motion to Amend Exemptions.

8. On September 14, 2011, these matters were heard jointly by the Court in an evidentiary hearing.

Based on the record, the stipulations of the Parties, the evidence presented at hearing and the arguments of counsel, the Court makes the following **FINDINGS OF FACT AND CONCLUSIONS OF LAW**:

## FINDINGS OF FACT

9. During the summer of 2007, the Debtors purchased real property located at 18700 Bluff Point Road, Cornelius, North Carolina ("Real Property") for $825,000.00 to remodel and sell.

10. The remodeling was completed in April or May 2008 at a cost of between $900,000.00 and $1,000,000.00. The Debtors first listed the Real Property for $2,000,000.00 during the remodeling in the fall of 2007. The Debtors continued to list the Real Property through December 2009 lowering the asking price over time to $1,300,000.00.

11. In December 2009, shortly before their bankruptcy filing, the Debtors moved into the Real Property and stopped listing the property for sale.

12. In their bankruptcy schedules filed on January 5, 2010, the Debtors' listed the Real Property with a value of $750,000.00 and with secured debt in the amount of $739,594.00. The Debtors claimed an exemption in the Real Property of $10,406.00, representing all of the disclosed equity.

13. Mr. Bechtold testified that the valuation was based on a realtor's market analysis and that the Debtors did not have the Real Property appraised.

14. On February 4, 2011, the Debtors listed the Real Property for sale with an asking price of $999,999.00 with Park Avenue Properties LLC.

15. The Real Property was advertised in the local multiple listing service ("MLS") stating "Approved Pre Foreclosure! Bankruptcy attny, owner&lender [sic] have agreed so we do not need lender approval. Seller can sign/close offer. This magnificent, custom home was $1.4 a year ago & 1.8 just before that."

16. The MLS listing also stated "This home is in immaculate condition and we are priced way below current market value."

17. Seven days later on February 11, 2011, the Debtors received a written offer on the Real property for their full asking price of $999,999.00. The next day the Debtors accepted the written offer.

18. On March 30, 2011, the Debtors closed on the sale of the Real Property and received the net proceeds of $65,472.06 after the payment of the two mortgages which had grown to $860,022.26, a realtor commission of $69,999.93, and other closing costs totaling $4,504.75.

19. At no time did the Debtors inform the Trustee, the Court or even their own attorney about the post-petition listing, the offer on the Real Property or the closing on the sale of the Real Property.

20. On April 29, 2011, in reviewing the records of the register of deeds, counsel for the Trustee discovered the Debtors' sale of the Real Property.

21. Pursuant to the Court's Order of May 2, 2011, the Debtors escrowed $40,000.00 with their attorney Martin Hunter, which is now being held in his firm's trust account.

22. The remaining $25,472.06 that the Debtors received from the closing of the sale of the Real Property had already been spent by the Debtors or transferred to third parties by the time the Trustee discovered the sale.

23. During the hearing, evidence was also presented by the Trustee showing that the Debtors had made numerous material misrepresentations and omissions in their bankruptcy schedules and statement of financial affairs, including undisclosed transfers of property to family members and other third parties.

24. These undisclosed transfers include the following:

   a. A marine vessel transferred on or about September 6, 2008 to Paul Kidd, which the Debtors owned free and clear of liens;

   b. $12,000.00 to Heidi Bonilla by check made on or about December 25, 2008;

   c. $12,000.00 to Heidi Bonilla by check made on or about December 25, 2008;

   d. $4,500.00 to Jeff Bectold, a son of the Debtors, by check made on or about June 20, 2009;

   e. $3,500.00 to Tim Bectold, a son of the Debtors, by check made on or about June 20, 2009;

   f. A deed of trust dated June 4, 2009, given for the benefit of Lorelei E. Thompson in the amount of $100,000.00, and recorded on June 5, 2009 with the Mecklenburg County Register of Deeds; and

   g. Rite Aid stock transferred in or around June 2009 for $4,671.00.

25. While Mr. Bechtold testified that the Debtors did not know that the debtors were not permitted to sell the Real Property, the record shows that they had previously sought and obtained an order for abandonment of another house during their bankruptcy case so that they could close on a short sale of the property.

26. Although Mr. Bechtold testified as to the Debtors' explanations for their listing and selling the Real Property as they did, the Court does not find his testimony to be credible under the

circumstances. The Court further finds that the Debtors knew that their sale of the Real Property was improper beyond any reasonable argument to the contrary.

27. The Court finds that the Debtors knew the Real Property was undervalued by them in their bankruptcy schedules and that such undervaluation constitutes a lack of full disclosure by them as to the Real Property.

28. The Court finds that the Debtors have acted in bad faith in their bankruptcy case and that the bankruptcy estate has clearly been prejudiced by the actions of the Debtors.

Based on the record and the findings of fact, the Court makes the following **CONCLUSIONS OF LAW**:

1. The Court has subject matter jurisdiction over the matters raised by the Trustee and the Debtors in their respective Motions pursuant to 28 U.S.C. §§ 1334, 151, and 157, and the Local Rule referring to the Bankruptcy Judge all bankruptcy matters filed in the United States District Court for the Western District of North Carolina.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1409, and this is a core proceeding pursuant to 28 U.S.C. § 157.

3. The Court cannot approve a sale of the Real Property by the Debtors after the fact when such transfer constitutes a violation of the automatic stay under Bankruptcy Code Section 362 and may be avoidable under Bankruptcy Code Section 549. Furthermore, the Debtors lack standing to sell property of the bankruptcy estate which has not been abandoned.

4. Even if the Court had discretion to approve the Debtors' sale of the Real Property nunc pro tunc, the Court would not exercise such discretion under these circumstances. As such, the Court should deny the Debtors' Motion to Approve Sale of Real property.

5. While Bankruptcy Rule 1009 represents a permissive approach to amendment of bankruptcy schedules, exceptional circumstances such as bad faith on the part of a debtor may prevent the debtor from amending the petition or schedules. *See* In Re Agee, 10-80545C-7D (Bankr. M.D.N.C. 2-2-

2011) (citing Tignor v. Parkinson, 729 F. 2d 977 (4th Cir. 1984)).

6. Bad faith is generally determined from the totality of the circumstances. In Re Agee. As such, the Court should properly consider all of the Debtors' conduct with regard to their bankruptcy proceeding in ruling on the Debtors' Motion to Amend Exemptions.

7. In this case the Debtors have exhibited a pattern of conduct from the outset of the case that reflects bad faith on the part of the Debtors. This conduct includes the omission of material transfers from their statement of financial affairs that clearly should have been disclosed. The most flagrant violation, however, is the failure to fully disclose the value of the Real Property that is the subject of the debtors' very Motion to Amend Exemptions.

8. In fact, the Debtors filed their Motion to Amend Exemptions only after the Trustee discovered the sale transaction. But for the Trustee's discovery, the Debtors would have never disclosed the sale of the Real Property to the Trustee nor would they have even sought to amend their exemptions.

9. With regard to the Real Property, it is clear that the Debtors were more interested in being generous to themselves than being just to their creditors. The Court cannot reward such conduct by allowing them to amend their exemptions under these circumstances.

10. The Court finds that the Debtors acted in bad faith in their bankruptcy case and that their conduct has materially prejudiced the Trustee and their bankruptcy estate. Either finding, much less both, would prevent the Debtors from being permitted to amend their exemptions. As such, the Debtors' Motion to Amend Exemptions should be denied.

11. On the Trustee's Motion for Show Cause, the Court finds that the Debtors have failed to show the Court cause as to why they should not be sanctioned for their actions in this matter. Based on their conduct, the Court finds that it should sanction the Debtors by ordering the forfeiture of their exemption in the Real Property. As such, the Court will order that the escrowed funds in the amount of $40,000.00 be turned over to the Trustee for the benefit of the bankruptcy estate. In addition, the Court will enter a money judgment against the Debtors, jointly and severally, in the principal amount of $25,472.06.

The Court will enter a separate Judgment consistent with the above FINDINGS OF FACT and

CONCLUSIONS OF LAW.


This Order has been signed electronically.        United States Bankruptcy Court
The judge's signature and court's seal
appear at the top of the Order.